IN THE UNITED STATES DISTRICT COURT FOR THE RECEIVED
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2019 FEB 22  A 10: 02

| | |
|---|---|
| JAY HAWTHORNE, ) | CASE NO. 2:19-cv-139  DEBRA P. HACKETT, CLK |
| Plaintiff, ) | U.S. DISTRICT COURT |
| v. ) | MIDDLE DISTRICT ALA |
| ) | JURY TRIAL REQUESTED |
| CITY OF PRATTVILLE, ALABAMA, ) | |
| Defendant. ) | FEBRUARY 21, 2019 |

## COMPLAINT

**COMES NOW** the Plaintiff, Jay Hawthorne (hereinafter Plaintiff or Mr. Hawthorne), by and through undersigned counsel of record, and hereby complains against the above-named Defendant, as set forth herein below.

### I. JURISDICTION AND VENUE

1.  Mr. Hawthorne files this Complaint, institutes these proceedings, and invokes the jurisdiction of this Court under and by virtue of 28 U.S.C. §§ 1331 and 1334 (a)(4), as an action arising under the Act of Congress known as the *Americans With Disabilities Act*, 42 U.S.C., as Amended, §12101 *et. seq.*), the *Rehabilitation Act of 1973* (29 U.S.C. §701, *et. seq.*) and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. 621 *et. seq.*, as amended by the *1991 Civil Rights Act*, and 42 U.S.C. 1981a, to obtain equitable relief, the costs of suit, including reasonable attorneys' fees, and damages suffered by the Plaintiff, due to the Defendant's unlawful discrimination and retaliation against him.

2.  Mr. Hawthorne first notified the Defendant of his claim of disability and age discrimination on or about May 25, 2018. He then filed a complaint of age and disability discrimination and retaliation discrimination with the EEOC in Birmingham on or about June 8, 2018. On December 22, 2018, the undersigned attorney received a Notice of Rights from the

1

EEOC, allowing Mr. Hawthorne to pursue his complaint in Court within 90 days of the receipt of said Notice. (See Exhibit A)

3. Venue is proper in the Middle District of Alabama, Northern Division, since the alleged discriminating actions of the Defendant occurred in Autauga County, Alabama.

## II. PARTIES

4. Mr. Hawthorne is a citizen of the United States and a resident of Autauga County, Alabama. Mr. Hawthorne is over the age of nineteen years.

5. The Defendant, City of Prattville (hereinafter "Defendant" or "the City") is a municipality located in Autauga County, Alabama.

## III. STATEMENT OF FACTS

6. Mr. Hawthorne has been an employee of the City of Prattville for nearly twenty-seven (27) years. His current position is Battalion Chief of the Fire Department. He is the fifth highest ranking officer in the Department. At the time of the filing of his complaint against the City of Prattville, he was fifty (50) years of age.

7. Mr. Hawthorne injured his neck in a non-work-related automobile accident in March of 2017 and, as a result, he was unable to work for an extended period of time.

8. He was placed on FMLA leave for twelve (12) weeks and, at the end of that period, he was given the opportunity to use his own leave time for sick leave.

9. Mr. Hawthorne asked his supervisor, Chief Terry Brown, to allow him to transfer into an Administrative Battalion Chief position that was supposed to be opening up in the department. However, he was told that he could not transfer into that position because it was not going to be filled. He was also told the Department only had three Battalion Chief positions and could not add another one.

10. At that time, Captain Josh Bingham, acting as a Training Captain, he was functioning in an Administrative capacity. Mr. Hawthorne asked to be transferred into that position, but his request was denied.

11. Mr. Hawthorne subsequently learned that the Department was waiting for him to retire and then they were going to put a younger man, namely Josh Bingham, into the Administrative Battalion Chief position. Bingham, at only thirty-three (33) years of age, was substantially younger than Mr. Hawthorne.

12. On October 23, 2017, Mr. Hawthorne was released to return to work on light duty, which limited him to lifting no more than twenty (20) pounds.

13. Then, on February 21, 2018, Mr. Hawthorne's doctor signed a statement that he should be released to return to work, on light/heavy duty status lifting no more than seventy-five (75) pounds. That work status was limited to six weeks.

14. On April 4, 2018, Mr. Hawthorne received a letter from Lisa Thrash, Director of Human Resources, stating that he had to return to full duty by April 22, 2018, or he would have to retire. If he chose to retire, he would be allowed to continue light duty until May 31, 2018.

15. On April 19, 2018, Mr. Hawthorne received his doctor's clearance to return to full duty as of April 30, 2018. He provided Human Resources the doctor's release and then returned to work on May 2, 2018.

16. On May 2, 2018, Mr. Hawthorne's first day back from having surgery, he took part in the quarterly physical training test. He passed the test, but he began having severe pain in his neck and shoulder. Because of this restriction, he was ordered to report to one of the fire stations to do administrative work on 24-hour shifts.

17. Mr. Hawthorne went to the City's worker's compensation doctor, and was placed on work restriction, that he was not to lift more than fifteen (15) pounds. Because of this restriction, he was ordered to report to one of the fire stations to do paperwork. He received a letter on May 14, 2018, outlining many limitations he had to follow if he wanted to continue working.

18. Under these limitations, Mr. Hawthorne was not allowed to drive a department vehicle. He has never seen a firefighter placed on restrictions such that they could not even drive a department vehicle or be made to stay on a 24-hour shift. Further, he was not allowed to go home in the evening, even though he could not respond to any calls. He was moved out of his office which was private with his own bathroom and murphy style bed as well as limited noise of alarm bells. He was then put in the back of the station in a bunk room with no door where the lower ranked firefighters sleep. With alarms going off all night and sleeping in an unfamiliar bed with an injury it was very uncomfortable and humiliating.

19. Mr. Hawthorne also learned that Captain Josh Brown was to be his supervisor, even though Mr. Hawthorne is a Battalion Chief and Josh Brown was a Captain. Mr. Hawthorne's only duties were what Captain Brown directed him to do, yet he was essentially on lock down for 24-hour shifts, as a form of harassment.

20. Mr. Hawthorne was no longer allowed to perform the duties of a Battalion Chief. He was replaced by Josh Brown. Brown is younger and is not disabled. He has been given more favorable treatment than Mr. Hawthorne. He has replaced Mr. Hawthorne as acting Battalion Chief even though Mr. Hawthorne is the Senior Battalion Chief.

21. Further, the temporary light duty accommodation Mr. Hawthorne was given by the Prattville Fire Department was rescinded on August 12, 2018, without a valid reason.

22. Mr. Hawthorne's medical provider's notice should have allowed him to receive workplace accommodations, as usually provided for other senior level firefighters and similarly situated senior staff members.

23. Mr. Hawthorne asked to be returned to the previous accommodation position, with full pay, benefits and privileges, in which he was working before the Defendant rescinded that accommodation. Alternatively, Mr. Hawthorne asked to be placed in the Administrative Battalion Chief position.

24. Mr. Hawthorne's requests for accommodations were denied without any reason given. The City never gave him any indication that his requests for accommodations would place an undue burden on the City.

25. Mr. Hawthorne's name was on the May 8, 2017, Duty Roster as a shift Battalion Chief. However, on the August 12, 2018 Duty Roster Mr. Hawthorne's name was not listed. On August 26, 2018, an additional Duty Roster was released and Mr. Hawthorne's name was not listed. On September 9, 2018, another Duty Roster was released and Mr. Hawthorne's name was back on the roster, but under a Battalion Chief who had put in for retirement and had less years at this rank. On February 10, 2019, Mr. Hawthorne was listed on the Duty Roster under a demoted Battalion Chief with fewer years of service to further humiliate him with his co-workers.

26. Fellow employees have asked Mr. Hawthorne if he has retired. According to the Duty Roster, his job was given to Mr. Josh Bingham, who is substantially younger than Mr. Hawthorne.

27. On the afternoon of August 10, 2018, Mr. Hawthorne and his wife Alisa, saw two Prattville Police Officers at a gas station in Prattville. The officers told them that Josh Bingham

had been promoted to Battalion Chief that day and would be over Mr. Hawthorne's shift. Mr. Hawthorne was not aware of Bingham's promotion, so he called Deputy Chief Michael Whaley to ask who to report to on Sunday, August 12, 2018, as he was off on Friday when Bingham's promotion was announced and the new roster was sent out. Deputy Chief Whaley texted Mr. Hawthorne to report to work as usual on Sunday, that Mr. Bingham was promoted and that he would be at Mr. Hawthorne's station and Hawthorne would be under Bingham and Captain Brown.

28.     Bingham's promotion to Battalion Chief actually made four (4) Battalion Chiefs for the City, when Mr. Hawthorne had been told there could only be three.

29.     On Wednesday, August 15, 2018, when Mr. Hawthorne reported to work, Captain Brown told Mr. Hawthorne to check his email as it said his accommodation was ended and that he would have to go home on worker's compensation. Being on worker's compensation meant a loss of approximately one third of his income.

30.     Deputy Chief Whaley told Mr. Hawthorne that Bingham was promoted so that the staff would be full when another Battalion Chief, Mike Rogers retired in January of 2019 and Mr. Hawthorne returned from his injury. Battalion Chief Mike Rogers actually retired September 30, 2018.

31.     While Mr. Hawthorne was working under an accommodation, wherein he was at work doing administrative duties, he did not have to use his accrued leave time. If he went home to sleep in a comfortable bed, he had to use his leave to do so.

**COUNT I**
**DISABILITY DISCRIMINATION**
**In Violation of the ADA, ADAA and Rehabilitation Act**

32.     Mr. Hawthorne repeats, re-alleges, and incorporates by reference paragraphs 1 through 31 above, the same as if more fully set forth herein and further avers as follows:

33. Mr. Hawthorne requested to be accommodated, by being placed into an Administrative Battalion Chief position.

34. Defendant denied Mr. Hawthorne's request for accommodation to be placed in an Administrative Battalion Chief position.

35. Mr. Hawthorne's request for an accommodation was denied, to force him to retire, so the Department could give the Administrative Battalion Chief position to a younger, non-disabled man, namely Josh Bingham.

36. Mr. Hawthorne also requested accommodation, merely to be allowed to go home at the end of the work day, while he was already on light duty restrictive status. Even though he could not go on calls, he was not allowed to go home at the end of the work day, even with recommendations of his workman's comp doctor and his counselor, without using vacation time.

37. Defendant failed to accommodate Mr. Hawthorne's disability by willfully, and/or maliciously, denying him a reasonable accommodation, due to his physical handicap as described above.

38. Defendant never claimed that Mr. Hawthorne's requests for accommodation were unreasonable or that they would cause an undue burden on the Defendant.

39. Because of his disability, Mr. Hawthorne is no longer allowed to perform the duties of a battalion chief. He has been replaced by Josh Bingham, who is not disabled. Bingham has been given more favorable treatment than Mr. Hawthorne; he has replaced Mr. Hawthorne as battalion chief.

40. Mr. Hawthorne was told that Josh Bingham was promoted so the staff would be full when another Chief, Mike Rogers, retired in January of 2019 and Mr. Hawthorne returned

from his injury. This was merely to explain away the fact that the City would have four Battalion Chiefs, instead of three it previously claimed as its limit.

41. The City's claim that it was limited to three (3) Battalion Chiefs was a pretext to cover up its discriminatory refusal to accommodate Mr. Hawthorne for his disability.

42. Mr. Hawthorne avers that Defendant's discrimination against him is due to his disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, prohibiting disability discrimination.

43. Mr. Hawthorne also avers that the City's failure or refusal to transfer him to the Administrative Battalion Chief position within the Prattville Fire Department was in violation of the Rehabilitation Act.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Mr. Hawthorne respectfully prays that this Court grant the following relief:

a) Judgment declaring that Defendant City of Prattville failed to accommodate Mr. Hawthorne for his disability.

b) Judgment declaring that Mr. Hawthorne suffered disability discrimination by the Defendant and its agents that Mr. Hawthorne;

c) An award of back pay and benefits from the date Mr. Hawthorne was Home on workers' compensation until the date of this Court's judgment in his case;

e) An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

f)  An award of compensatory damages for mental anguish, to which Mr. Hawthorne may be entitled; and

g)  Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT II
## AGE DISCRIMINATION
## In Violation of the ADEA

44.  Mr. Hawthorne repeats, re-alleges and incorporates by reference paragraphs 1-43 above, the same as if more fully set forth herein, and further avers as follows:

45.  On or about April 11, 2018, Mr. Hawthorne asked his supervisor, Chief Brown, to allow him to transfer into an Administrative Battalion Chief position that was supposed to be opening up in the department. However, he was told that he could not transfer into that position because it was not going to be filled.

46.  At that time, Captain Josh Bingham, a younger man, was acting as a Training Captain, he was functioning in an Administrative capacity. Mr. Hawthorne asked to be transferred into that position, but his request was denied.

47.  Mr. Hawthorne subsequently learned that the Department was waiting for him to retire and then they were going to put Josh Bingham, into the Administrative Chief position. At the time of the discriminatory incident, Mr. Bingham was only 33 years of age and, therefore, substantially younger than Mr. Hawthorne.

48.  Mr. Hawthorne was later replaced by Josh Brown, as battalion chief. Brown is younger and is not disabled. He has been given more favorable treatment than Mr. Hawthorne. He has replaced Mr. Hawthorne as acting Battalion Chief even though Mr. Hawthorne is the Senior Battalion Chief.

49.     The City's claim that it was limited to three (3) Battalion Chiefs was a pretext to cover up its age discrimination against Mr. Hawthorne.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Mr. Hawthorne respectfully prays that this Court grant the following relief:

a) Judgment declaring that Defendant City of Prattville, and its agents, discriminated against Mr. Hawthorne because of his age.

b) An award of back pay and benefits from the date Mr. Hawthorne was sent home on workers compensation until the date of this Court's judgment in his case;

c) An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

d) Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT III
### RETALIATION DISCRIMINATION
### In Violation of the ADA, ADAA and Rehabilitation Act

50.     Mr. Hawthorne repeats, re-alleges and incorporates by reference paragraphs 1-49 above, the same as if more fully set forth herein, and further avers as follows:

51.     On or about May 25, 2018, Mr. Hawthorne, through his attorney, sent a letter to Mayor William Gillespie, in which he complained of the age and disability discrimination he was experiencing on the job.

52.     On or about May 23, 2018, when the City of Prattville did not respond to his complaint to Mayor Gillespie, Mr. Hawthorne filed an age and disability discrimination claim with the Equal Employment Opportunity Commission.

53. Mr. Hawthorne's name was on the May 8, 2017, Duty Roster as C shift Battalion Chief. However, on the August 12, 2018 and August 26, 2018 Duty Rosters, Mr. Hawthorne's name was not listed.

54. Because Mr. Hawthorne's name was not even on the latest roster, several people asked if he had retired. It appears that Mr. Hawthorne's job was given to Mr. Bingham, a younger, non-disabled man.

55. On August 10, 2018, Captain Josh Bingham was promoted to Battalion Chief in the Prattville Fire Department. Newly promoted Battalion Chief Josh Bingham was then assigned to Mr. Hawthorne's station, and placed in his office. Mr. Hawthorne had to answer to Bingham, even though Mr. Hawthorne had seniority over him. Mr. Hawthorne was told to report to Captain Josh Brown until Mr. Hawthorne was able to return to full duty.

56. Even though Mr. Hawthorne could not respond to calls, he was placed on 24-hour shifts. He was required to remain at his station and do administrative paperwork, even though there was no legitimate reason to do so. Mr. Hawthorne was not allowed to drive any department vehicles, even though he was not limited from driving. This was merely a form of humiliation.

57. Further, Mr. Hawthorne was not allowed to go home in the evening, and was forced to sleep on an unfamiliar bed, which was extremely uncomfortable, given his neck and shoulder condition.

58. Mr. Hawthorne's only duties were what were assigned to him by Captain Brown.

59. Mr. Hawthorne was forced to work in a cold and hostile environment, despite his 26-plus years of service. There has never been four Battalion Chiefs at the stations. Mr.

11

Hawthorne is the Senior Battalion Chief in the Prattville Fire Department and he is being treated as if he has no job.

60. While Mr. Hawthorne was working under an accommodation, wherein he was at work doing administrative duties, he was not having to use his accrued leave time. However, afterward, beginning May 20, 2018, if he went home to sleep in a comfortable bed, he had to use his leave to do so.

61. On Wednesday, August 15, 2018, when Mr. Hawthorne reported to work, he was told that his accommodation was ended and that he would have to go home on workers' compensation. This is causing him to lose one-third of his income, due to the reduced pay rate while on workers compensation. To make up the difference, Mr. Hawthorne has used leave, which he ordinarily would not have had to use.

62. Defendant's actions toward Mr. Hawthorne, including the unlawful retaliation against him, and the cold and hostile working environment, violated his rights under the Americans With Disabilities Act (ADA), as amended by the ADAA (42 U.S.C. §12101 *et. seq.*) and the Rehabilitation Act.

63. As a proximate cause of Defendant's afore-described actions of unlawful retaliation against Mr. Hawthorne, he was injured and damaged, as set forth in paragraphs 1 – 62 above. In addition, Mr. Hawthorne has suffered considerable mental and emotional anguish.

### **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Mr. Hawthorne respectfully prays that this Court grant the following relief:

a) A declaratory judgment declaring that the Defendant has unlawfully retaliated against Mr. Hawthorne by their complaints of discrimination;

b) An order granting Mr. Hawthorne compensation (back pay and front pay) and benefits for rights to which they would have been entitled, had he not been a victim of retaliation, effective from the date of his respective terminations until the final judgment in this case;

c) An award of compensatory damages, for mental anguish, to which Mr. Hawthorne may be entitled;

d) An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

f) Such further, other and different relief as the Court may deem appropriate and necessary.

Respectfully submitted this 21st day of February, 2019.

Jay Hawthorne, Plaintiff

BY:

*/s/ Joseph Guillot*
Joseph Guillot (ASB-4581-O35J)
Counsel for the Plaintiffs

OF COUNSEL:
**MCPHILLIPS SHINBAUM, L.L.P.**
516 South Perry Street
Montgomery, Alabama 36104
(334) 262-1911
(334) 263-2321 FAX
joeglaw5@gmail.com

## JURY DEMAND

Plaintiff hereby requests trial by jury on all issues so triable.

_____
OF COUNSEL

I have reviewed the forgoing and confirm that it is true and accurate to the best of my knowledge and understanding.

_____
Jay Hawthorne, Plaintiff